## J. L. Jackson et al. v. A. R. Andrews.

### No. 206.

**1. Foreclosure on One of Two Vendor Lien Notes does not Conclude the Right of Holder of Other Note not Party to Suit.—** K., holding a joint note given in part payment for a tract of land, which note had been fully paid, and also a valid claim for $160 secured by a vendor's lien on one-half of the same land, executed by L., a subsequent purchaser of such half, wrongfully brought suit on the note against the makers thereof, and under a judgment of foreclosure had therein the entire tract was sold to A., to whom K. then transferred the lien given by L. *Held*, that as L. was not a party to the foreclosure suit, and the lien given by him was not adjudicated therein, A. was not precluded from asserting such lien against the part of the land covered by it.

**2. Parties to Judgment—Vendor's Liens of Equal Dignity, when.** At the time L. bought one-half the land and executed the lien that was transferred to K., and then to A., he executed in addition a separate note for $85, also carrying a vendor's lien on the one-half purchased. This note was sold to J., who brought suit thereon, but without making K. or A. parties thereto, and himself bought the land under foreclosure of his lien. *Held*, that the vendor's liens emanating from L. were of equal dignity, and that J.'s rights under his judgment and purchase were not superior to those of L. as holder of the lien transferred to him; both J. and A. being entitled to share the proceeds of a sale of the land in proportion to their claims under L.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*E. P. Nicholson*, for appellant.—1. If Kuteman purchased only the claim against Little, and by that purchase he was enabled to institute a suit, and by fraudulent practice recover a judgment, and by the sale under the execution issued upon that judgment he sold, among other things, the 80 acres purchased from Key and Plumlee by Little, and thus collected twice the amount of his claim against Little, he would have no standing in a court of equity to collect any further sum from Little by suit against him; and he could not transfer to Andrews any greater right than he himself possessed.

2. Plaintiff, Andrews, never acquired any right in or to the land, neither jus in re nor jus ad rem, until after the rendition of Jackson's judgment and foreclosure.

3. If Kuteman, by fraudulent practice, collected as much money as was due him by Little, he could not be heard to allege any further claim against Little. The Dos Hermanos, 2 Wheat., 76; Hyatt v. Brown, 15 Wall., 177.

4. The court erred in its conclusion of law in stating, " the suit brought by Jackson on his $85 note against Little, Key, and Sumerall did not in any way affect the rights of Kuteman or his vendee, as they were not parties thereto. The rights of the parties to this suit are the same as if neither of the suits had been brought;" because at the date of the insti-

tution of Jackson's suit against Key, Little, and Sumerall, Kuteman had not purchased the claim against Little. No one can be made a party to a suit unless he has some interest in the subject matter of the suit. Hall v. Harris, 11 Texas, 304; Rubber Co. v. Goodyear, 9 Wall., 788.

5. No one can take advantage of his own wrong. Kitchen v. Rayburn, 19 Wall., 254; Wheeler v. Sage, 1 Wall., 518.

*I. W. Stephens,* for appellee.—1. While Andrews acquired his rights to the debt and lien after the rendition of the Jackson judgment, those through whom he acquired said rights owned and held the same long before the institution of the Jackson suit, of which rights Jackson had notice when he purchased said $85 note. Appellant's proposition is, that while A is not bound by a pending suit to which he is not a party, his assignee under transfer made after suit brought would be, which is absurd.

2. Appellant Little admitting the debt sued on to be still due and unpaid, can not plead a payment of the same by appellee, who was under no obligation to pay the same, and who did not pay the same at the instance nor for the benefit of said Little, but who only acquired the right to collect said debt from said Little through his transaction with said Kuteman.

3. The alleged misconduct of Kuteman in his suit against Plumlee, Key, and Sumerall, while it may have procured for him from appellee more money than he was entitled to, did not deprive said Little and Jackson of anything, it being held that appellee acquired through said suit no title whatever to the land claimed by said Little and his vendee. Andrews v. Key, 77 Texas, 35. Conduct must be relied on, and a stranger can neither be bound nor aided by estoppel. 2 Pome. Eq., secs. 812, 813; 1 Pome. Eq., sec. 399.

4. While no one can take advantage of his own wrong, no one can take advantage of somebody else's being wronged, if he himself is not wronged; and the want of clean hands does not preclude the assertion of a legal right. 2 Pome. Eq., secs. 812, 813; 1 Pome. Eq., sec. 399.

5. While Andrews and Kuteman may not have had any interest when Jackson brought this suit, those under whom they claim did have, and could have been made parties to that suit. See authorities cited in appellee's brief in 77 Texas, 35.

HEAD, ASSOCIATE JUSTICE.—We find the conclusions of fact filed by the court below sustained by the evidence, and to be an accurate and clear statement of the facts developed, and we therefore adopt them as our conclusions, as follows:

"I find: 1. That on the 9th day of January, 1885, M. Stults and wife deeded to D. M. Key and J. R. Plumlee the land described in plaintiff's

petition. That as a part of the consideration for said land J. R. Plumlee and D. M. Key executed to said M. Stults their nonnegotiable note for $690, due in three annual installments of $230 each, the first installment coming due on 25th of December, 1885, the second on the 25th of December, 1886, and the third on 25th of December, 1887. That a lien was reserved on said land to secure payment of said note.

" 2. That on the 22d day of June, 1885, the said Plumlee and Key divided said land between them, Key taking the east and Plumlee the west half, same being divided by Willow Branch. That said Stults was then the owner of said $690 note, which was then unpaid. At the same time Key and Plumlee apportioned their liability between them on said $690 note.

" 3. That on the 2nd day of November, 1885, Key and wife sold and conveyed the east half of said 160 acres of land to W. H. Little; that thereafter Plumlee and wife joined in said deed, the consideration for the land, as recited in the deed thereto, being $85, payable to said Key; and said Little also agreeing, as a part of the consideration, to pay M. Stults the balance due and payable on said $690 as agreed upon between said Key and Plumlee, to-wit, $72.50 due December 25, 1885, $80 due December 25, 1886, and $80 due December 25, 1887; to secure the payment of said deferred payments a vendor's lien was reserved in said deed.

" 4. That said Key transferred the $85 note to defendant Jackson. The $72.50 due December 25, 1885, was paid by said Little, which was all he ever paid on said land, and after paying said $72.50, Little sold the 80 acres to Lucy B. Sumerall.

" 5. That in the spring of 1886, J. R. Plumlee being in possession of the west half, and W. H. Little of the east half, said Plumlee paid off and took up the original $690 note by letting said Stults, who was the owner of said note, have back 50 acres of said west half, and paying him, besides, certain personal property.

" 6. That on the 25th of December, 1886, Plumlee sold to W. T. Ballard his claim against Little for said $160 that Little in his deed agreed to pay, and turned over to said Ballard the $690 note, with directions to Ballard to get Little to execute to him (Ballard) his two notes for $80 each, as he had agreed to do to Stults in his deed from Key and wife, and with directions to Ballard to return the note for $690 to him (Plumlee).

" 7. Ballard never got any notes from Little, but took the Stults note and traded it to W. H. Kuteman for $80, at the same time telling him the amount due thereon. That there was then credited on said note $72.50 . and $22.50; that Ballard sold and conveyed to said Kuteman his claim against said Little as same was conveyed to him by Plumlee (said Ballard conveyed to Kuteman claims and liens that were transferred to him by Plumlee).

" 8. In January, 1887, said Kuteman brought suit in the District Court

of Parker County on the $690 note against J. R. Plumlee, D. M. Key, and Lucy B. Sumerall, who were then in possession of the east half of said land under a deed from said Little.   There were no other parties to said suit.   That Kuteman in that suit obtained judgment against said Plumlee and Key for $365.20 and a foreclosure of his lien on said 160 acres of land as same existed on the 9th of January, 1885, against all of said defendants.

"That on the 3d of May, 1887, said 160 acres of land was sold by the sheriff of Parker County, Texas, under an order of sale issued on said judgment, and the plaintiff herein, A. R. Andrews, at said sale purchased said 160 acres of land for the sum of $375 cash, and received sheriff's deed thereto; that said $375, after paying the court cost, was paid to said Kuteman; that after the land was purchased by the plaintiff Andrews, H. W. Kuteman transferred to said Andrews the interest and rights acquired against Little to the east half of said land.

"9.   That on the 24th day of December, 1886, John L. Jackson, defendant herein, instituted suit in the District Court of Parker County, Texas, on the $85 note that he had obtained from said D. M. Key, against said Key, Little, and Mrs. Lucy B. Sumerall, who had bought out Little and was in possession of the east half of said 160 acres, and obtained judgment on said note against said parties for amount of his vendor's lien on said 80 acres.   That on the 3rd day of May, 1887, the east half of said 160 acres of land was sold by the sheriff of Parker County under an order of sale issued on said judgment, and John L. Jackson, defendant herein, bought the same for $31 and took sheriff's deed to same.   That said sale was made immediately after the sale under the Kuteman judgment.   That the only parties defendant to said suit were Key, Little, and Sumerall.

"10.   That Kuteman, at the time he purchased said claim, and at the time he brought his suit, knew of the claim and lien held by said Jackson on said land; and that the plaintiff herein, A. R. Andrews, at and before he bought the land at said sheriff's sale, knew of the lien held by John L. Jackson on the east half of said land.

"11.   That Jackson, at and before he bought the $85 note, knew of the existence of the demand and lien herein sued on, and knew it was a lien on said land, and that said lien was in all things equal to the one held by him (Jackson)."

*Opinion.*—The conclusions of law filed by the trial court were as follows:

"1.   The defendants, Jackson and Little, neither of them being parties to the suit brought by H. W. Kuteman on the $690 note against J. R. Plumlee and others, were in no way bound by said suit; neither were the rights of said Kuteman nor his assignee, Andrews, the plaintiff herein, bound as to the claims here sued on.

" 2. The fact that Kuteman brought suit on a note that was paid off and discharged, and obtained a judgment against parties that did not owe him anything, did not estop him, nor his vendee Andrews, the plaintiff herein, from proceeding against W. H. Little on the $160 demand sued on, and to foreclose their lien on the east half of said land.

" 3. The suit brought by Jackson on his $85 note against said Key, Little, and Sumerall, did not in any way affect the rights of Kuteman or his vendee, as they were not parties thereto. The rights of the parties to this suit are the same as if neither of the suits had been brought.

" 4. The note of $85 on which Jackson sued and obtained judgment against Little, Somerall, and Key, and the $160 here sued on, all being liens of equal dignity upon the east half of said 160 acres of land, and the rights of the respective holders of said liens not having been affected by said suit, they should share the proceeds of the sale of said land in proportion to their said claims."

We approve these conclusions, at least in so far as appellant can have any just cause of complaint thereat, and feel that we can add but little to what is therein stated. It will be seen from the conclusions of fact, that had appellant prevailed in the court below, he would have obtained the 60 acres of land claimed by him without it ever having been paid for as agreed by his vendor, Little, at the time of his purchase, and appellee, Andrews, would have acquired nothing as to this land by reason of his purchase at the sale under the judgment procured by Kuteman on the $690 note originally given by Key and Plumlee to Stults, and which had been paid by Plumlee. This suit was instituted to foreclose the lien reserved in the deed from Key to Little, in which the latter agreed to pay to Stults the amount due him from Key, appellee, Andrews, having become the owner of this claim; and the fact that Kuteman recovered a judgment upon another and unfounded claim against Key and Plumlee, and realized at a sale thereunder a sufficient sum from appellee, Andrews, to have discharged Little's debt, if applied thereto, can not enure to the benefit of Little nor to those claiming under him. Little was not a party to that suit, and the fact that Kuteman was not entitled to the money thus obtained does not entitle Little to it. If Kuteman had no right to the money, neither did Little; and if there is any way consistent with legal principle for appellee to get it back from the parties who ought to pay it, he should be allowed to do so. Until this proceeding, suit was never instituted upon the claim that Little agreed to pay to Stults as a part of the consideration of the conveyance from Key, and after appellee purchased at the sales under the Kuteman judgment, the latter, who held this claim, transferred it to him. The court below held, that this claim was only of equal dignity with the $85 note given by Little to Key and transferred to Jackson, and this view is probably sustained by expressions in the opinion of our Supreme Court when a branch of this case was

on a former appeal before it. Andrews v. Key, 77 Texas, 35. We are not prepared to approve this conclusion in its entirety. The note which Little assumed to pay to Stults was a prior lien to any which could be created in the conveyance from Key to Little. It was the original purchase money that Key had agreed to pay Stults at the time of his purchase, and it would seem, upon principles of equity, that it should have had priority over the $85 note, which in one sense may be treated as the profit Key had made upon the transaction; but as to this we express no authoritative opinion, as the error, if any, was to the prejudice of appellee, and he does not complain.

We are of opinion that the judgment of the court below should be in all things affirmed, and it is so ordered.

*Affirmed.*

Delivered June 28, 1893.

Justice STEPHENS did not sit in this case.